EDWARD V. SULLIVAN, Appellant, *v.* DAILY MIRROR, INC., and Others, Respondents.

First Department, May 29, 1931.

*Lewis F. Glaser*, for the appellant.

*Edward A. Robertson*, for the respondents.

O'MALLEY, J. The complaint, which has been dismissed for insufficiency, purports to set forth two causes of action for libel.

From the pleading attacked it appears that the plaintiff is a writer of sporting articles and topics, of good reputation in his profession in the city of New York where he has resided for many years and where his activities have been conducted. The corporate defendant, Daily Mirror, Inc., is the owner and publisher of a newspaper known as *The Daily Mirror* with a large general circulation in the city of New York. The defendant Kobler is the editor and publisher of said newspaper and the defendant Parker is a writer employed by the corporate defendant and the defendant Kobler.

It is charged that on April 25, 1930, the defendants maliciously and wickedly contriving to injure and defame the plaintiff in his character and reputation and to destroy him in his profession and calling, falsely and maliciously composed and published in *The Daily Mirror* an article concerning the plaintiff in his profession and calling, which contained the following false and defamatory matter: " Speaking, I presume, for the Duffy interests which he seems to represent, Mr. Ed Sullivan, the columnist, and, as he confesses, ' the original booster of the big man from the South of Italy,' offers to take ' any odds such a scoffer as Danyell Parker will offer and back Carnera to beat such as Godfrey, Jim Maloney, K. O. Christner, Jack Gagnon, Ted Sandwina, Jack Dorval, Babe Hunt or Marty Gallagher.'

" Now look here, Eddie, you old sheik. You know I only get a sporting editor's salary and therefore have no money to squander betting on fights. And if I did have a sideline or two that enabled me to bet on a scrap, do you think I'd be foolish enough to bet on a fight in which Primo Carnera participated — presuming, of course, he will ever participate in a real fight?

" That ' Danyell ' seems to indicate there is just a touch of pique in Eddie's challenge to wager with me. I wonder if he resents the fact that the *Mirror* has printed all the facts about Primo and his faking entourage, which his own paper seems just to have heard about — a week after the scandal broke.

" The trouble with me — or one of the troubles — is that I am not under obligations to be ' loyal ' to Primo or any of his clique. Only my dear, dear public has a claim on me. I don't think Bill Duffy is a hero. I have no use for Abe Attell. And, oh, what I know about Eddie Sullivan! "

The second cause of action reincorporates certain allegations contained in the first, and charges that on October 15, 1930, the defendants, with the same purpose and intent as charged in the first, published in *The Daily Mirror* of and concerning the plaintiff in his profession and calling the following false and defamatory matter: " I wonder if my pal, Eddie Sullivan, was driving at me

in his column yesterday when he spoke of ' Fearless Dan McGrew.'
* * * Well, it is about time Good Old Eddie came back.
Wasn't it last May we had that pleasant little tilt about Primo
Carnera? Eddie picked the argument, and then ran off snivelling
to his lawyer and threatened to sue me! * * * Hot cha cha!
What a powerful writer! I mean Eddie's lawyer. * * * Eddie
used to be a press agent once. Did I say he used to be? * * *
I've got to be careful what I say about dear little Eddie or his
lawyer will send me another letter. * * * A nice kid but he
can't take it. * * * That is, he can't take a bit of rough
joshing. * * * Otherwise, he can — and does — take it.
* * * But he shouldn't start anything he can't finish. * * *
You know he's the guy that discovered Exclusively about that
blister on Lefty Hallahan's finger. * * * Now if it had been
a blister on Lefty's heel you would have expected it from Eddie.
* * * Sullivan's heels, you know. How Eddie plays up those
heels! * * * I really ought to write a column on golf today
instead of coming back at Eddie. That's what he always does.
* * * Or I might write a eulogy of Gyp the Blood. * * *
But Eddie might sue me for infringement of territory again.
* * * Eddie says what the country needs is more fearless sport
writers. * * * Yeah, and they shouldn't be on the payroll.
* * * Now hop back into Primo's left shoe, Eduardo, until I
need you again."

With respect to both articles, the complaint charges falsity,
scienter on the part of the defendants, malice, and intent to injure
plaintiff in his reputation and his profession and calling. It is
charged with respect to both articles that defendants meant and
intended to mean that the plaintiff was paid or bribed to write
favorable sporting articles concerning one Primo Carnera, a prize-
fighter, active in New York city and vicinity, without regard to the
merit of said Carnera and said publications were so understood by
the readers of newspapers and the public generally and that such
was their intent, purpose and effect; that the defendants further
meant by the publications, and intended to mean, that the plaintiff
was guilty of a crime, in that he had been corruptly influenced to
write favorable sporting articles concerning said Carnera, without
regard to his merit, and that the said publications were likewise so
understood by the readers of the said newspaper and by the public
generally, and that such was likewise their intent, purpose and
effect.

It is further charged that by reason of the publications, the
plaintiff has been held up to public contempt, disgrace and ridicule;
has suffered mental pain and anguish and has been irreparably

injured in his profession and calling of a newspaper writer and writer of sporting articles; that his standing among newspaper publishers, newspaper writers and sporting writers and the public generally has been impaired, if not permanently affected; and that said publications have induced an evil opinion of him in the minds of newspaper writers and readers generally, all to the plaintiff's damage.

The complaint has been dismissed upon the ground that neither of the articles upon which the causes of action are predicated is libelous *per se;* that they contain nothing more than keen jesting or banter, without malice, and are, therefore, not open to a libelous construction.

We are of opinion that the learned justice at Special Term took an erroneous view of the effect of the publication. It is well settled that words that impute dishonesty are actionable *per se* (*Den Norske Ameriekalinje Actiesselskabet* v. *Sun Printing & Pub. Assn.,* 229 N. Y. 617) and that the publication of a charge which has a tendency to injure or prejudice one in the exercise of his profession or calling is libelous *per se.* (*Ben-Oliel* v. *Press Publishing Co.,* 251 N. Y. 250.) So, too, in construing an article it is to be considered in its entirety and in the light of the peculiar facts and circumstances to which it relates. (*More* v. *Bennett,* 48 N. Y. 472; *Kloor* v. *New York Herald Co.,* 200 App. Div. 90.) The test is whether to the mind of an intelligent man, the tenor of the article and the language used naturally import a criminal or disgraceful act. (*Rossiter* v. *N. Y. Press Co., Ltd.,* 141 App. Div. 339; *Church* v. *Tribune Assn.,* 135 id. 30.)

We are of opinion that the publications justify the innuendo pleaded. We cannot read the articles in their entirety without being convinced of their tendency to impress the average intelligent mind with disgraceful conduct on the part of the plaintiff in the exercise of his profession. Their effect as a whole is to leave the impression that the plaintiff had been paid to write favorable comments concerning Carnera, without regard to his merit as a prizefighter, and without regard to plaintiff's own honest opinion of Carnera's ability and in disregard of the loyalty that the plaintiff as a writer owed to the reading public and to his employer. It is to be observed that the articles here are written in a sporting vernacular which is easily and readily understood by those interested in prizefighting and who read and follow daily sporting pages of newspapers. Such readers are familiar with the various persons and characters who participate in this class of sport and with their reputation for honesty or dishonesty as the case may be. Certainly,

to this class of readers the articles may well be open to the construction which the plaintiff has placed upon them in his pleading.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint denied, with ten dollars costs, with leave to defendants to answer within twenty days upon payment of said costs.

FINCH, P. J., McAVOY, MARTIN and TOWNLEY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to defendants to answer within twenty days from service of order upon payment of said costs.