Dan S. O'Leary, Plaintiff, *v.* Hearst Magazines, Inc., a Delaware
Corporation, Defendant.

Supreme Court, Erie County, October 26, 1937.

*Everette H. Hunt*, for the plaintiff.

*Dwyer, Reilly, Roberts, McLouth & Dicker*, for the defendant.

MacGregor, J. The defendant moves for judgment on the
pleadings and admissions of fact and for a dismissal of the complaint
upon the ground that the complaint does not state a cause of
action.

The action is based upon an alleged libel. In 1935 a story written
by a well-known author appeared in four consecutive monthly
installments in the Hearst's *International-Cosmopolitan* magazine
under the title " Hard To Get." The hero of the story bore the
name of " Dan Solaire." The plaintiff claims that he was the one
intended by the author to be pictured as the fictional character,
and bases such claim upon the fact that the story relates to a
" man-about-town;" that plaintiff was a newspaper writer in New
York city and known as the " man about town;" that an illustration
in the magazine in connection with the story was similar to those
used in advertising him as the " man about town " and also that the

intention to use him as the character is evidenced by the similarity in name phonetically. Whether his claims in this respect are warranted by the facts is not before us. It is to be presumed in passing upon this motion that his allegations in that respect are true. The question also whether or not he suffered any substantial damage by reason of the publication of the story is not here involved.

Assuming that the plaintiff is the character in the novel, he is pictured as a young man of quite distinguished lineage who was left a comfortable fortune by his father in trust; that he lived a luxurious life, was socially very prominent and was extremely attractive to the feminine sex. He was much sought after from a matrimonial standpoint, but still remained a bachelor. To the world he was a man about town; he apparently had reached the end of his fortune by indulging in high living and also through gambling at the resort of one Dagan, who was murdered. The solution of who murdered Dagan is the central theme of the story, and Solaire is the hero who, through his efforts, courage and ability solves the mystery.

In the course of the solution by him, according to the story, suspicions are entertained by Inspector Hanrahan, an inspector of the New York police department, as to the extent of his knowledge of the murder of not only Dagan but the murder of another who is murdered in the course of the events following the murder of Dagan. To the inspector, the story says, he was " a ruined wastrel." He is accused of association with characters of the underworld and the suspicions of the inspector as to his connection with the murders referred to in the course of the story are carried to the extent of placing him under arrest.

The facts, however, as shown in the story in its entirety, are that his course of conduct and contact with individuals was only in connection with the solution of the mystery, and, according to the writer, he emerges as a young man of remarkable talent and ability. The story in its finality leaves no impression in the mind of the reader that any of the claims made by the inspector are or were true, but, on the other hand, the ordinary reader of the story would be led to a sense of admiration for the splendid qualities that he possessed, except that there might be differences of opinion as to his moral qualities.

The alleged libelous statements are contained in the May, 1935, installment. If that installment is to be considered separate and apart from the other installments, then some of the statements are libelous *per se*, and the general tenor would impute to him acts and qualities that would naturally bring him into disrepute.

Pursuant to a demand to admit made by the defendant upon the plaintiff (Civ. Prac. Act, § 323), the plaintiff has admitted that the story was printed in four installments and the whole story is before the court upon this motion, but the plaintiff does not admit that the installments of the story, except the one in which the alleged libel was printed, are admissible in evidence.

It is a general rule that an article must be read in its entirety in reaching a conclusion as to its libelous character. (*Kloor* v. *New York Herald*, 200 App. Div. 90; *More* v. *Bennett*, 48 N. Y. 472; *Sullivan* v. *Daily Mirror, Inc.*, 232 App. Div. 507.)

The defendant contends that in accordance with this rule all of the installments must be taken into consideration.

With this contention I do not agree. It would not seem reasonable that a publisher could falsely charge a reputable person with depravity, connection with the commission of crimes and of being arrested on suspicion in one edition of a publication and then in another say that the charges were not true and thus relieve himself from liability for any damages that might have been caused. The right of action originated immediately upon the publication of the libel.

The trend of opinion seems to be that subsequent publications removing the sting of the article or in the nature of retraction may be introduced in evidence in mitigation of damages but not for the purpose of ascertaining whether the specific article is libelous. (*Newby* v. *Times Mirror Co.*, 46 Cal. App. 110; 188 P. 1008; *Luna* v. *Seattle Times Co.*, 186 Wash. 618; 59 P. [2d] 753; *Gould* v. *Weed*, 12 Wend. 12; *Hotchkiss* v. *Oliphant*, 2 Hill, 510.)

The charges and intimations contained in the May, 1935, installment that the plaintiff was a " ruined wastrel;" that he was connected with two murders; that he was an associate of characters of the underworld and that he was placed under arrest, are charges that tend to injure the reputation of the plaintiff. To be depicted even in a fictional writing that a person is such a type would have a tendency to lower him in the estimation of people.

Any false accusation which dishonors or discredits a man in the estimate of the public or his friends and acquaintances, or exposes him to ridicule or has a reasonable tendency to do so, is libelous *per se.* (*Bennet* v. *Commercial Advertiser Assn.*, 230 N. Y. 125; *O'Connell* v. *Press Pub. Co.*, 214 id. 352; *Triggs* v. *Sun Printing & Pub. Assn.*, 179 id. 144; *Mase* v. *Reilly*, 206 App. Div. 434; *Pignatelli* v. *Sun Printing & Pub. Assn.*, 201 id. 590; *Callahan* v. *Israels*, 140 Misc. 470.)

The motion is denied, with costs.