ANTHONY DAZZO et al., Appellants-Respondents, v SAMUEL MEYERS, as President of Local 259, United Automobile Aerospace and Agricultural Implement Workers of America, et al, Respondents-Appellants.

Second Department, October 19, 1981

**APPEARANCES OF COUNSEL**

*Crossin & Crossin (William J. Crossin* of counsel), for appellants-respondents.

*Carb, Luria, Glassner, Cook & Kufeld (Stephen J. Fallis* of counsel), for Atherton Cadillac, Inc., and others, respondents-appellants.

*Sipser, Weinstock, Harper, Dorn & Liebowitz (Jerome Tauber* of counsel), for Samuel Meyers, respondent-appellant.

**OPINION OF THE COURT**

GIBBONS, J.

This appeal presents for resolution, *inter alia,* questions concerning the legal sufficiency of a complaint containing

allegations that defamatory statements were utilized as a method of discrimination to prevent employment, and whether such alleged conduct constitutes the kind of "outrageous conduct" which is not pre-empted by sections 7 and 8 of the National Labor Relations Act (US Code, tit 29, §§ 157, 158), and for which the State is permitted to provide a concurrent remedy for damages.

The factual background of this case is as follows:

Anthony Dazzo (plaintiff) was employed by defendant Atherton Cadillac, Inc. (Cadillac) as its service department general manager from 1965 to February 11, 1975. On that latter date, Dazzo was discharged by Cadillac. At the time of the discharge, Cadillac was in the process of negotiating a labor dispute with its employees who were represented by Local 259, United Automobile Aerospace and Agricultural Implement Workers of America (Local 259).

Dazzo challenged his firing as an unfair labor practice, claiming that Local 259 requested his dismissal in exchange for bargaining concessions with his employer in violation of the National Labor Relations Act.

Dazzo was ultimately successful in his claim before the National Labor Relations Board (NLRB) which directed, *inter alia,* that Local 259 agree to Dazzo's reinstatement and that Local 259 pay Dazzo for any lost earnings. The order of the NLRB was affirmed by the Court of Appeals and judgment was entered thereon *(National Labor Relations Bd. v Local 259,* CA, June 30, 1977).

The plaintiffs commenced the instant action against defendants Atherton Cadillac, Richard C. Atherton, Jr., its president, and Frank Pepine, its service manager, on September 22, 1977, and against the defendant Local 259 on October 4, 1977. Plaintiff Anthony Dazzo pleaded four causes of action. First, he alleged that Local 259 had "[by] unlawful malicious [and] illegal acts" caused Cadillac to fire him on February 11, 1975 *and* that Local 259 had continued from that time "to date" to prevent his re-employment within the automobile servicing industry by communicating "threats of economic reprisals to potential and actual employers".

Second, Dazzo pleaded that the allegations in the first cause of action, with respect to his discharge by Cadillac,

had already been adjudicated and fully litigated by virtue of the determination of the NLRB and the judgment of the United States Court of Appeals.

Third, Dazzo alleged that "in about November, 1976 [defendant] Pepine, while acting as an authorized agent of [the defendants] Cadillac and Atherton" slandered Dazzo to an employer by stating that, when Dazzo was employed by Cadillac, Dazzo stole money and property from Cadillac, and that this slander, among other things, damaged his reputation and prevented him from obtaining gainful employment.

Fourth, beginning about January, 1975, and continuing to date, defendants Local 259, Cadillac and Atherton, later joined by Pepine, conspired and agreed "to harrass [sic] defame and deprive plaintiff of his livelihood [sic]" by (a) securing his discharge from Cadillac, (b) securing his discharge from a subsequent employer, (c) making numerous false utterances concerning his integrity and fitness as a service manager and maligning his reputation, and (d) from January, 1975 to date, continuously and maliciously harassing plaintiff in his occupation.

The fifth cause of action was alleged by Dazzo's wife as a derivative cause of action for mental distress and loss of her husband's comfort and companionship.

Local 259 petitioned to have the matter removed to the Federal District Court for the Eastern District of New York. Its position was that the first two causes of action were governed by the National Labor Relations Act and that the claim was, therefore, one arising under the laws of the United States. Plaintiffs moved in the Federal court to have the matter remanded to the State court. The latter motion was granted by Judge PLATT of the District Court in a decision in which he held that, although jurisdiction over violations of the National Labor Relations Act concerning union discrimination in employment opportunities is preempted by the NLRB's primary jurisdiction, where, however, the claimed violation of the Labor Act also constituted either the tort of intentional infliction of emotional distress or the tort of "intentional circulation of defamatory material known to be false", cognizable State claims

were pleaded under the rationale expressed in *Farmer v Carpenters* (430 US 290, 304-306). Without expressing any further opinion, the matter was remanded to the State court for a determination as to "whether the proof will be sufficient under State law to amount to such outrageous conduct causing emotional distress and mental anguish or defamation as to warrant a recovery on the part of the plaintiff[s] herein."

Upon remand to the Supreme Court, Suffolk County, defendant Local 259 and defendants Cadillac, Richard Atherton and Frank Pepine moved, each separately, to dismiss the complaint on three grounds: (1) that the NLRB had exclusive jurisdiction; (2) pursuant to CPLR 3211 (subd [a], par 5), that the action was barred by the one-year Statute of Limitations for intentional torts; and (3) pursuant to CPLR 3211 (subd [a], par 5), that the matter was *res judicata,* referring to the judgment of the Second Circuit enforcing the order and decision of the NLRB. In addition, Local 259 asked for dismissal on the ground that it could not be sued in the name of the unincorporated association nor be held liable for actions not approved or ratified by its members (see CPLR 1025; General Associations Law, § 13) and that plaintiffs' attempt to remedy these alleged defects by serving an amended complaint (adding the name of the President of Local 259, Samuel Meyers, and an assertion of ratification by the membership) was ineffectual, inasmuch as the amended complaint was not timely served.

Plaintiffs cross-moved for consolidation of the actions pleaded in the first and second complaints, or, alternatively, to amend the first complaint to include the new allegations contained in the second complaint.

Special Term dismissed the complaint as to all defendants except with respect to those allegations which it deemed to state "causes of action for the intentional infliction of emotional distress and the plaintiff wife's derivative action for mental distress, both of which causes of action shall also be dismissed unless plaintiffs meet the burden of proving that the events allegedly giving rise to a cause of action for intentional infliction of emotional distress are closely connected and form a clear and discernible pattern of harassment and intimidation continuing beyond one

year of the date upon which the action was commenced against each defendant".

Assuming that "the act upon which the action for libel and slander [is based] occurred in February, 1975" (instead of "November, 1976" as alleged in the complaint), the court held that "the action which was commenced in September, 1977 is barred as it was not begun within the one-year statutory limitation as mandated by CPLR 215 (3)."

The plaintiffs were allowed to amend their complaint to the extent of inserting the name of the president of Local 259 to the caption of the action and adding an allegation that the acts complained of were ratified by the membership of Local 259, upon the ground that "[t]here is no prejudice to the defendants, since they had notice of the amendment and it is purely technical in nature."

The allegations of the first and second causes of action asserted in the complaint, which pertain to the claim for lost wages, do not imply such outrageous conduct as is necessary to provide a State remedy concurrent with Federal labor claims pre-empted by the National Labor Relations Act (see *Farmer v Carpenters,* 430 US 290, *supra)* and those causes of action were, therefore, properly dismissed by Special Term.

As to the remaining causes of action asserted in the complaint, consideration must now be given to what actions are not within the exclusive jurisdiction of the NLRB.

The United States Supreme Court in *Farmer v Carpenters (supra),* in passing upon what disputes are not pre-empted, turned to its prior holding in *Linn v Plant Guard Workers* (383 US 53), a case involving *"malicious libel",* and delineated the circumstances when the doctrine of pre-emption does not apply in the case of an egregious tort.

The court held (pp 298-299) as follows:

"The nature of the inquiry is perhaps best illustrated by *Linn* v. *Plant Guard Workers, supra.* Linn, an assistant manager of Pinkerton's National Detective Agency, filed a diversity action in federal court against a union, two of its officers, and a Pinkerton employee, alleging that the defendants had *circulated a defamatory statement* about him in violation of state law. If unfair labor practice charges

had been filed, the Board might have found that the union violated § 8 by intentionally circulating false statements during an organizational campaign, or that the issuance of the malicious statements during the campaign had such a significant effect as to require that the election be set aside. Under a formalistic application of *Garmon [San Diego Unions v Garmon,* 359 US 236], the libel suit could have been pre-empted.

"But a number of factors influenced the Court to depart from the *Garmon* rule. First, the Court noted that the underlying conduct — the intentional circulation of *defamatory material* known to be false — was not protected under the Act, 383 U.S., at 61, and there was thus no risk that permitting the state cause of action to proceed would result in state regulation of conduct that Congress intended to protect. Second, the Court recognized that there was '"an overriding state interest"' in protecting residents from malicious libels, and that this state interest was '"deeply rooted in local feeling and responsibility."' *Id.,* at 61, 62. Third, the Court reasoned that there was little risk that the state cause of action would interfere with the effective administration of national labor policy. The Board's § 8 unfair labor practice proceeding would focus only on whether the statements were misleading or coercive; whether the statements also were *defamatory* would be of no relevance to the Board's performance of its functions. *Id.,* at 63. Moreover, the Board would lack authority to provide the defamed individual with damages or other relief. *Ibid.* Conversely, the state-law action would be unconcerned with whether the statements were coercive or misleading in the labor context, and in any event the court would have power to award Linn relief only if the statements were defamatory. Taken together, these factors justified an exception to the pre-emption rule." (Emphasis added.)

Applying these criteria, we find that the third cause of action for slander is properly within State court jurisdiction and that it was erroneously dismissed by Special Term as untimely. We reinstate that cause of action because it particularizes the precise slanderous words used by defendant Pepine, acting as an agent of Cadillac and Atherton,

to defame plaintiff to an employer "in about November 1976" (see CPLR 3016). That conduct is actionable, for it, too, is unrelated to the employment discrimination preempted by Federal law. The date alleged makes the action timely inasmuch as the action, as above noted, was commenced on September 22, 1977 and October 4, 1977 and, therefore, within the one-year period of limitations provided under CPLR 215 (subd 3). We are also of the view that the fourth and fifth causes of action of the complaint do not, as Special Term suggests, contain sufficient allegations to spell out a cause of action for the intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress involves "a deliberate and malicious campaign of harassment or intimidation" *(Nader v General Motors Corp.,* 25 NY2d 560, 569). In *Flamm v Van Nierop* (56 Misc 2d 1059, 1060), in sustaining a complaint alleging a cause of action for intentional infliction of emotional distress, the court distinguished such cause of action from one for defamation by noting that an action for libel and slander provides recourse for oral or written records which tend to deprive a victim of his good name, "[b]ut when the actor's conduct is extraordinarily vindictive, it may be regarded as so extreme and so outrageous as to give rise to a cause of action for emotional distress. This is the test laid down in the Restatement 2d, Torts (§ 46)." (See, also, *Russo v Iacono,* 73 AD2d 913.) In *Clark v New York Tel. Co.* (52 AD2d 1030, affd 41 NY2d 1069), it was held that the failure to "disclose" the falsity of a defamatory affidavit did "not state facts sufficiently shocking or outrageous" to allege a cause of action for intentional infliction of mental distress.

We are of the opinion, however, that the fourth cause of action in the complaint also suggests a cause of action for slander that is unrelated to employment discrimination as defined in sections 7 and 8 of the National Labor Relations Act (see *Farmer v Carpenters,* 430 US 290, *supra;* cf. *San Diego Unions v Garmon,* 359 US 236, *supra; Linn v Plant Guard Workers,* 383 US 53, *supra).* It is here alleged that employers other than Cadillac were persuaded by defendants to deny plaintiff employment, evidently not because of any labor or union dispute, but simply by the use of

malicious defamation. The conclusory allegations relating to potential and actual employers are not sufficient, however, to make out the claim (see *Susskind v Ipco Hosp. Supply Corp.,* 49 AD2d 915), nor do they provide sufficient notice that any of the transactions or occurrences that would comprise the claim occurred within one year of the date the action was commenced.

Any statement made by the defendants imputing dishonesty to the plaintiff is actionable (see *Four Star Stage Light. v Merrick,* 56 AD2d 767; 34 NY Jur, Libel & Slander, § 36, p 507).

A false statement concerning plaintiff's "integrity, fitness as a service manager and [which] maligned his reputation", as alleged in the fourth cause of action in the complaint, is likewise actionable defamation (see *Sullivan v Daily Mirror,* 232 App Div 507).

In *Stefania v McNiff* (49 Misc 2d 480) Justice SHAPIRO, formerly of this court, held that a false written claim that the plaintiff violated a union contract, and a request based on such assertion that plaintiff not be considered for promotion, was actionable defamation.

Damages for mental suffering and physical distress are allowable elements in a defamation action *(Maybruck v Haim,* 40 AD2d 378, 380; *Sorge v Parade Pub.,* 20 AD2d 338, 341; *Garrison v Sun Print. & Pub. Assn.,* 207 NY 1; 35 NY Jur, Libel & Slander, §§ 172-173).

In the *Garrison* case *(supra),* it was held that when a wife may recover damages for mental distress and physical suffering caused by a willful and malicious libel, her husband would be entitled to recover for loss of services. In this connection, the court held (p 10), as follows:

"Reaching the conclusion as I, therefore, do, that the wife might have recovered damages for the mental distress and physical sufferings caused by the publication of defendant's libel, it follows that plaintiff as her husband may maintain this action for loss of society and services. He had a right to these. The services were presumably of pecuniary value to him and any wrong by which he was deprived thereof was a wrong done to his rights and interests for which he may recover damages. *(Cregin* v. *Brooklyn Cross-*

*town R.R. Co.,* 74 N. Y. 192; *Reynolds* v. *Robinson,* 64 N. Y. 589; *Wilson* v. *Goit* [17 NY 442], cited *supra; Olmsted* v. *Brown,* 12 Barb. 657.) * * *

"If the defendant was guilty of wrongful conduct which made it liable to the wife for personal sufferings, it also should be liable to the plaintiff for the loss of his wife's services caused by the same act."

Thus, with respect to the fourth cause of action, to the extent that it alleges that the defendants "conspired and agreed amongst themselves to harass, *defame* and deprive plaintiff of his livelihood *[sic]*" and "intentionally committed the following wrongful acts * * * c) they made numerous *false utterances* concerning plaintiff Anthony Dazzo's integrity, fitness as a service manager and *maligned his reputation*" (emphasis added), it would appear that said plaintiff is attempting to plead a cause of action for slander. The cause of action is, however, insufficient in its present form. It is lacking in the essential requirement mandated by CPLR 3016 (subd [a]), in that it fails to state the specific words uttered. In addition, it fails to allege the falsity of the utterances and *scienter;* it does not identify the employers and prospective employers to whom the false statements were made, nor that, relying on them, they either discharged or refused to hire him.

Leave should, therefore, be granted to permit the plaintiffs to amend accordingly.

As above noted, a properly pleaded cause of action in defamation, claiming physical distress and mental suffering, could be the basis for a derivative cause of action by a spouse for loss of society and, thereby, save the fifth cause of action brought by Dazzo's wife.

To the extent that, under the fourth cause of action, the plaintiff seeks recourse by reason of the *coercive* tactics of the union and Cadillac subsequent to his discharge, it is our view that those matters are pre-empted. However, those allegations of defamation which are utilized as a method of discrimination to prevent employment are, as stated in the *Farmer* case (430 US 290, 305, *supra),* "a function of the particularly *abusive manner* in which the discrimination is accomplished or threatened" (emphasis

added), and, therefore, a cause of action, properly within the domain of State court jurisdiction, is stated.

We have examined the other contentions raised by the parties and find them to be without merit.

Accordingly, for the reasons hereinabove set forth, the order should be modified by reinstating the third cause of action for slander against the defendants Atherton Cadillac, Inc., Richard C. Atherton, Sr., and Frank Pepine, and by dismissing the fourth cause of action, which alleges a cause of action on behalf of plaintiff Anthony Dazzo for the intentional infliction of emotional distress, and said plaintiff's wife's derivative fifth cause of action therefor, for legal insufficiency, without prejudice to replead (a) a fourth cause of action alleging a conspiracy by the defendants to harass and damage plaintiff Anthony Dazzo by uttering defamatory remarks to his potential and actual employers to deprive him of gainful employment by maligning his reputation for honesty and integrity and fitness for employment as a service manager in the automobile retail business and, thereby, to cause him mental suffering and physical suffering; and (b) a fifth (derivative) cause of action by said plaintiff's wife. As so modified, the order should be affirmed insofar as appealed from, without costs or disbursements.

DAMIANI, J. P., LAZER and COHALAN, JJ., concur.

Order of the Supreme Court, Suffolk County, dated January 2, 1979, modified, on the law, by reinstating the third cause of action for slander against the defendants Atherton Cadillac, Inc., Richard C. Atherton, Sr., and Frank Pepine; and by dismissing the fourth cause of action, which alleges a cause of action on behalf of plaintiff Anthony Dazzo for the intentional infliction of emotional distress, and said plaintiff's wife's derivative fifth cause of action therefor, for legal insufficiency, without prejudice to replead (a) a fourth cause of action alleging a conspiracy by the defendants to harass and damage plaintiff Anthony Dazzo by uttering defamatory remarks to his potential and actual employers to deprive him of gainful employment by maligning his reputation for honesty and integrity and fitness for employment as a service manager in the automobile

retail business and, thereby, to cause him mental suffering and physical suffering; and (b) a fifth (derivative) cause of action by said plaintiff's wife. As so modified, order affirmed insofar as appealed from, without costs or disbursements. Plaintiffs' time to replead is extended until 20 days after service upon them of a copy of the order to be made hereon, with notice of entry.