828 F.2d 921
 14 Media L. Rep. 1705
 Donna Newbury DALBEC, formerly Donna Newbury, and Richard
Dalbec, Plaintiffs-Appellees, Cross-Appellants,
v.
GENTLEMAN'S COMPANION, INC., Gentleman's Companion Magazine,
Inc. and LFP, Inc., Defendants,
Gentleman's Companion Magazine, Inc. and LFP, Inc.,
Defendants-Appellants, Cross-Appellees.
 Nos. 765, 695 and 873.
 Dockets 86-7889, 86-7891 and 86-7895.
 United States Court of Appeals,
 Second Circuit.
Argued Jan. 28, 1987.
Decided Sept. 4, 1987.
 
 John H. Gross, New York City (Anderson Russell Kill & Olick, New York City, Lombardi, Devorsetz, Stinziano & Smith, Syracuse, N.Y., of counsel), for defendants-appellants.
 William A. Sekellick, Albany, N.Y. (Gary A. Lefkowitz, Albany, N.Y., of counsel), for plaintiffs-appellees.
 Before OAKES, MESKILL and MAHONEY, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Gentleman's Companion Magazine, Inc. (GCMI) and LFP, Inc. appeal from a judgment entered following a jury trial in the United States District Court for the Northern District of New York, McCurn, J., determining that GCMI and LFP (sometimes collectively referred to hereinafter as "the rest magazine" or "Gentleman's Companion" ) libeled plaintiff Donna Dalbec on two occasions and awarding Dalbec and her co-plaintiff, husband Richard Dalbec, $325,000 in compensatory and punitive damages. Judge McCurn denied the defendants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The Dalbecs cross-appeal from the district court's rulings allowing GCMI and LFP to amend their answers, which resulted in dismissal of certain of plaintiffs' claims.
 
 
 2
 The judgment is affirmed.
 
 BACKGROUND
 
 3
 Gentleman's Companion magazine published the following statement, labeled "Classified Information," in its May 1980 issue.
 
 TINY YOUNG GIRL
 
 4
 22 but looks 13, 4' 5", 82 lbs., will be your "Lolita." I am very small and cannot take a big man, except by mouth. Send all details and SASE to Donna Newbury, P.O. Box 43, East Greenbush, NY 12061.
 
 
 5
 J.App. at 251, 257 (hereinafter the "May statement"). Gentleman's Companion obtained the May statement, along with several other personal solicitations, by contacting individuals who previously had placed advertisements in M.E.T. Personals, a magazine that publishes similar "swinger's ads." Tr. 132-33. Gentleman's Companion received a consent form,[1] purportedly signed by "Donna Newbury," along with the May statement, which it published without charge. The statement and the consent form, however, actually were signed and submitted by one James Bruni, a stranger to plaintiffs and to this action. Bruni apparently hoped to entice readers to send money to him in exchange for pictures or correspondence from "Donna Newbury." The issue of Gentleman's Companion containing the May statement went on sale on April 10, 1980. In July 1980, Gentleman's Companion learned that Bruni had falsely submitted the May statement and had forged the consent form. Tr. 131-46, 248.
 
 
 6
 Plaintiff Donna Dalbec's maiden name is Donna Newbury. She and her husband Richard Dalbec reside in East Greenbush, a small rural community where Mrs. Dalbec has spent most of her life. Mrs. Dalbec, a mother of two, enjoyed an excellent reputation among her family, friends and neighbors there. After circulation of the May statement, however, plaintiffs were deluged with telephone calls soliciting the sexual favors of "Donna Newbury." Mrs. Dalbec's mother, Ruth Newbury, received 90-100 calls. Tr. 32. Other family members likewise received calls. As a result, Mrs. Dalbec became distraught, nervous and fearful, and her relationships with her husband and children suffered. In September 1980, in response to the May statement, plaintiffs instituted this libel action against LFP and GCMI, the publishers of Gentleman's Companion. Tr. 186.
 
 
 7
 After learning of Bruni's attempted fraud and after receiving plaintiffs' summons and complaint, Gentleman's Companion published what it now describes as a "retraction," which provided:
 
 
 8
 It turns out that Margie Phillips and Donna Newbury (E. Greenbush, New York--near Albany) are phonies operating out of the same company. Both of their letters are written on the same pink copy paper. Donna says that she dresses like a little girl, while Margie claims to be a love slave. Their ads are come-ons designed to rip off our readers, so we've deleted them.... If you receive a letter from a "swinger" that asks you to send money, please inform the GC office immediately, and we'll kick the scumbag out. Classified Information was designed to open up your sex life and help you meet new people, not to allow these leeches to steal your money, so help us keep the section clean.
 
 
 9
 J.App. at 256, 258 (hereinafter the "December statement"). Mrs. Dalbec was not contacted before publication of the December statement and, upon learning of it, she and her husband amended their complaint to allege an additional charge of libel based on the December statement's depiction of her as a "phon[y]."
 
 
 10
 Initially, GCMI and LFP jointly admitted responsibility for publication of both the May and December statements. GCMI, a wholly owned subsidiary of LFP, was incorporated after publication of the May statement. Following the close of plaintiffs' case, each defendant moved to amend its answer regarding responsibility for the statements. LFP moved to change its admission to publication of the December statement to a denial and GCMI moved to change its admission to publication of the May statement to a denial. The district court allowed the amendments and dismissed the claims against GCMI arising out of the May statement and the claims against LFP arising out of the December statement. Tr. 339.
 
 
 11
 On August 8, 1986, after a four day trial, a jury awarded Donna Dalbec $50,000 for loss of reputation and $145,000 for mental anguish as a result of the May statement, as well as $15,000 for loss of reputation, $75,000 for mental anguish and $25,000 in punitive damages arising out of the December statement. The jury awarded Richard Dalbec $10,000 for loss of consortium as a result of the May statement and $5,000 for loss of consortium as a result of the December statement. The district court denied the defendants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial, and this appeal followed.
 
 DISCUSSION
 1. Defendants' Appeal
 
 12
 The defendants contend that neither the May statement nor the December statement was made with a sufficient degree of fault to warrant a finding of liability under New York libel law. The defendants also contend that neither statement was "of and concerning" Mrs. Dalbec. Finally, the defendants attack the jury's damages awards as excessive or otherwise unjustified. We discuss separately each contention with respect to each statement.
 
 
 13
 a. The May Statement
 
 
 14
 The district court instructed the jury that liability could not attach to the May statement unless it was published "in a grossly irresponsible manner." Tr. 468. See Chapadeau v. Utica Observer-Dispatch, 38 N.Y.2d 196, 379 N.Y.S.2d 61, 64, 341 N.E.2d 569 (1975). We assume without deciding and only for purposes of this appeal that the May statement concerned an arguably legitimate matter of public concern meriting the protection of the strict Chapadeau test. A wide variety of factors enter into the determination of whether a statement was published in a grossly irresponsible manner. These include
 
 
 15
 whether sound journalistic practices were followed in preparing the defamatory article ..., whether normal procedures were followed and whether an editor reviewed the copy ..., whether there was any reason to doubt the accuracy of the source relied upon so as to produce a duty to make further inquiry to verify the information ..., and whether the truth was easily accessible....
 
 
 16
 Hawks v. Record Printing & Pub. Co., 109 A.D.2d 972, 486 N.Y.S.2d 463, 466 (3rd Dep't 1985) (citation omitted).
 
 
 17
 Gentleman's Companion actively solicited the May statement. The statement's lewd description of Donna Newbury wrongly suggests that Donna Dalbec is promiscuous and in the eyes of many perverse. It identifies her by her full maiden name and places her in the small town where she was born and still resides. The magazine admittedly did nothing to verify the statement. Under Hawks, we cannot conclude that the jury's finding of gross irresponsibility was irrational.
 
 
 18
 A statement is not libelous unless it is "of and concerning" the plaintiff. New York Times v. Sullivan, 376 U.S. 254, 288, 84 S.Ct. 710, 730, 11 L.Ed.2d 686 (1964). The test is whether " 'the libel designates the plaintiff in such a way as to let those who knew [the plaintiff] understand that [s]he was the person meant. It is not necessary that all the world should understand the libel.' " Fetler v. Houghton Mifflin Co., 364 F.2d 650, 651 (2d Cir.1966) (quoting Miller v. Maxwell, 16 Wend. 9, 18 (N.Y.Sup.Ct.1836)). "The question is not so much who was aimed at, as who was hit." Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 63-64, 126 N.E. 260, 262 (1920) (dictum).
 
 
 19
 The magazine principally contends that Donna Dalbec's reputation is so impeccable that no one would have believed that she placed the May statement and, thus, that it was not "of and concerning" her. It also contends that physical dissimilarities between Mrs. Dalbec and the description in the May statement and the use of Mrs. Dalbec's maiden name (Newbury) also undermine the jury's finding that the May statement was "of and concerning" her.
 
 
 20
 We disagree. People need not necessarily believe that Mrs. Dalbec placed the ad; they need only believe that it was about her. Fetler, 364 F.2d at 651. Moreover, the physical dissimilarities between Mrs. Dalbec and the "Lolita" depicted in the May statement do not require reversal of the jury's finding.[2] There was testimony that Mrs. Dalbec was physically smaller when she was in high school, lending credence to her theory that people who knew her then believed that the statement was about her. Tr. 58-59. Most telling, plaintiffs produced direct testimony from East Greenbush residents who associated her with the statement. Tr. 53-54, 68, 70, 75. In the context of the magazine's use of her maiden name and the small town where she resides, we are unable to conclude that the jury's finding in this regard was not rational.
 
 
 21
 The magazine contends that the damages award was excessive. The effect of the May statement's brutally disparaging depiction need not be described exhaustively--suffice to say that plaintiffs produced evidence that their marital relationship eroded, that Mrs. Dalbec's relations with her children deteriorated and that East Greenbush residents changed their opinion of her. Likewise, plaintiff Richard Dalbec's testimony directly supported the jury's award for loss of consortium.
 
 
 22
 In sum, the evidence supported the jury's awards for injury to reputation, mental anguish and loss of consortium. We will not disturb the damage award relating to the May statement.
 
 
 23
 b. The December Statement
 
 
 24
 The jury determined that the December statement defamed Mrs. Dalbec because it identified her as a "phon[y]." The district court instructed the jury that liability could not attach to the December statement unless it too was published in a grossly irresponsible manner.
 
 
 25
 To establish liability, it is not enough to show that one or more employees, having no contact with the individuals responsible for a libelous statement, suspected or knew of the falsity of the statement. Rust Communications v. 70 State Street Travel, 122 A.D.2d 584, 504 N.Y.S.2d 927, 927-28 (4th Dep't 1986) (citations omitted). Rather, it must be shown that the employees responsible for the statement knew of or suspected its falsity. Id.
 
 
 26
 When the magazine published the December statement accusing "Donna Newbury" of fraud, it admittedly knew that she did not sign the consent form or submit the May statement. Plaintiffs' summons and complaint relating to the May statement were served on the magazine at least one month before it published the December statement. The complaint informed the magazine that Donna Dalbec's maiden name was Donna Newbury and that she lived in East Greenbush. The May and December statements concern precisely the same subject matter, thus providing a reasonable basis for a jury to conclude that the same magazine employees were responsible for both statements and were aware of the original lawsuit. The magazine failed to offer evidence to the contrary. It was, therefore, reasonable for the jury to infer that the magazine had "any reason to doubt the accuracy" of the accusation of fraud contained in the December statement. See Hawks, 486 N.Y.S.2d at 466. We, therefore, will not disturb the jury's finding that the December statement was published in a grossly irresponsible manner.
 
 
 27
 The magazine contends that Donna Dalbec's reputation is so impeccable that no one could reasonably believe that she was the Donna Newbury referred to in the December statement. The magazine thereby attempts to rely on "the disturbing irony inherent in the scheme: the more virtuous the victim of the libel, the less likely it will be that she will be able to establish" that the statement was of and concerning her. Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980).
 
 
 28
 The magazine's reliance is misplaced. The magazine identified Mrs. Dalbec by her maiden name, Donna Newbury, a name which several residents of East Greenbush still associate with her. Tr. 49, 66, 115. The December statement placed her in East Greenbush, a small community where she has resided most of her life. Mrs. Dalbec is the only Donna Newbury there. Finally, the December statement's accusation of fraud was not so outlandish as to preclude a reasonable person from concluding that Mrs. Dalbec was the Donna Newbury referred to in the accusation. In this context, the jury could have rationally concluded that the December statement was "of and concerning" Mrs. Dalbec. Compare Allen v. Gordon, 86 A.D.2d 514, 446 N.Y.S.2d 48, 49-50 (1st Dep't) (statement not "of and concerning" plaintiff where location of plaintiff different from location given in statement and statement prominently displayed disclaimer indicating that all names used were fictitious), aff'd mem., 56 N.Y.2d 780, 452 N.Y.S.2d 25, 437 N.E.2d 284 (1982), with Geisler, 616 F.2d at 638-39 (statement referred to plaintiff's name and physical characteristics and caused reasonable persons to associate plaintiff with individual described in statement; plaintiff's allegations sufficient to withstand dismissal for failure to state claim for relief).
 
 
 29
 We, therefore, will not disturb the jury's finding of liability resulting from the December statement.
 
 
 30
 The jury awarded compensatory damages in the form of injury to reputation, mental anguish and loss of consortium, as well as punitive damages, in connection with the December statement. Defendants attack each element of the award.
 
 
 31
 Under the First Amendment, presumed and punitive damages may not be recovered in cases involving matters of public concern in the absence of actual malice. Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974); Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 757-63, 105 S.Ct. 2939, 2944-47, 86 L.Ed.2d 593 (1985). See Davis v. Ross, 107 F.R.D. 326, 329-30 (S.D.N.Y.1985) (applying Gertz and Dun & Bradstreet to New York libel law); Salomone v. MacMillan Pub. Co., 77 A.D.2d 501, 429 N.Y.S.2d 441, 443 (1st Dep't 1980) (interpreting Gertz ). New York does not permit compensatory damages to be recovered absent proof of injury to reputation or malice. Grossman v. Fieland, 107 A.D.2d 659, 483 N.Y.S.2d 735, 737 (2d Dep't 1985); France v. St. Clare's Hospital & Health Center, 82 A.D.2d 1, 441 N.Y.S.2d 79, 82 (1st Dep't 1981). Here the jury found actual malice, Tr. 500-01, and so we first scrutinize that finding.
 
 
 32
 A finding of malice must be based on clear and convincing evidence that "the defendant in fact entertained serious doubts as to the truth of his publication," or, in the alternative, knew of its falsity. St. Amant v. Thompson, 390 U.S. 727, 731-32, 88 S.Ct. 1323, 1325-26, 20 L.Ed.2d 262 (1968). See New York Times, 376 U.S. at 285-86, 84 S.Ct. at 729. In reviewing a finding of malice, we are obligated to conduct " 'an independent examination of the whole record.' " New York Times, 376 U.S. at 285, 84 S.Ct. at 729 (quoting Edwards v. South Carolina, 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963)). See Tavoulareas v. Washington Post Co., 817 F.2d 762, 788-89 (D.C.Cir.1987) (in banc); Oakes, Proof of Actual Malice in Defamation Actions, 7 Hofstra L.Rev. 655, 707-09 (1979). Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted. Bose Corp. v. Consumers Union of United States, 692 F.2d 189, 196 (1st Cir.1982), aff'd, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).
 
 
 33
 The magazine explicitly labeled "Donna Newbury" a fraud while admittedly knowing that she did not submit the May statement or sign the consent form. The magazine also admitted that it conducted an independent investigation of the source of the May statement and knew it to be Bruni. Tr. 409-13. At least one month before the December statement was published, the magazine was informed of the true state of affairs by the complaint associated with commencement of this lawsuit. Moreover, the plain language of the December statement strongly supports the inference that it was made with knowledge of its falsity. The statement explicitly identifies Donna Newbury of East Greenbush as a fraud, as opposed to simply informing the readership that the May statement was fraudulent. The magazine fails to offer a plausible explanation for its choice of language. The jury, therefore, as the ultimate finder of fact, could reasonably have concluded that the December statement's "allegation[ ] [was] so inherently improbable that only a reckless man would have put [it] in circulation." See St. Amant, 390 U.S. at 732, 88 S.Ct. at 1326. We will not disturb the jury's finding of malice.[3]
 
 
 34
 Turning to the elements of the damages, we find no basis for upsetting the jury's award. The jury awarded $15,000 for injury to reputation. Damage to reputation may be inferred in the presence of malice. Grossman, 483 N.Y.S.2d at 737; Blumenstein v. Chase, 100 A.D.2d 243, 473 N.Y.S.2d 996, 998 (2d Dep't 1984). The amount is not so high that it must be disturbed.
 
 
 35
 Having established malice, plaintiffs were entitled to recover for mental anguish and loss of consortium. Dazzo v. Meyers, 83 A.D.2d 14, 443 N.Y.S.2d 245, 250-51 (2d Dep't 1981). Plaintiffs amply demonstrated the May statement's devastating effect on Mrs. Dalbec. In this context, the jury could have rationally believed plaintiffs' testimony as to additional emotional distress and erosion of their marital relationship resulting from the December statement. See Tr. 221-22. The awards of $75,000 for mental anguish, see Pirre v. Printing Developments Inc., 468 F.Supp. 1028, 1038 (S.D.N.Y.) (upholding $45,000 mental anguish award), aff'd without opinion, 614 F.2d 1290 (2d Cir.1979), and $5,000 for loss of consortium, were not excessive.
 
 
 36
 In reviewing an award of punitive damages, courts must keep the award within reasonable bounds and set aside awards that are "shockingly excessive." Nellis v. Miller, 101 A.D.2d 1002, 477 N.Y.S.2d 72, 73 (4th Dep't 1984). Punitive damages are awarded as a punishment to the defendant and as a warning and example to deter the defendant and others from committing like offenses in the future. Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67, 101 S.Ct. 2748, 2759-60, 69 L.Ed.2d 616 (1981). As required under the First Amendment, the jury was instructed that it could not award punitive damages unless it found by "clear and convincing evidence" that the December statement was published with "knowledge of falsity or reckless disregard for the truth," Tr. 500-01. Gertz, 418 U.S. at 342, 350, 94 S.Ct. at 3012; see Dun & Bradstreet, 472 U.S. at 757-63, 105 S.Ct. at 2944-47. The jury so found. Tr. 504. Also, the plaintiffs adduced evidence that the December statement's accusation of fraud was made in retaliation for plaintiffs' initial libel action relating to the May statement, evidence the jury properly could have considered in calculating the amount of damages. The award of $25,000 is not impermissible in relation to the goals of just punishment and deterrence and need not be disturbed.
 
 
 37
 The jury's finding of liability and award of damages relating to the December statement are affirmed.
 
 2. Plaintiffs' Cross-Appeal
 
 38
 Plaintiffs filed their amended complaint on April 10, 1981. On June 15, 1981, GCMI and LFP filed their amended answer in which they jointly admitted responsibility for the May and December statements. Amended Answer paragraphs 11, 20. Trial commenced on August 4, 1986. Plaintiffs contend that the district court abused its discretion in permitting the amendments. The amendments rendered LFP, the parent corporate-publisher, liable solely for the May statement and GCMI, the subsidiary-publisher incorporated after the May statement was published but before the December statement was published, liable solely for the December statement. Plaintiffs argue that the defendants delayed too long by waiting until the close of plaintiffs' proof to offer the amendments. See Evans v. Syracuse City School District, 704 F.2d 44, 47 (2d Cir.1983) (amendments should be offered no later than the time of pretrial unless compelling reasons are presented).
 
 
 39
 Review of a district court's decision to allow an amendment is limited to whether the court abused its discretion. Evans, 704 F.2d at 47. In our review of the court's exercise of its discretion, "the most important question is whether the new issues were tried by the parties' express or implied consent and whether the [opposing party] '[was] prejudiced by the implied amendment.' " Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1086 (2d Cir.1977) (quoting 3 Moore's Federal Practice p 15.13 at 993 (2d ed. 1966)).
 
 
 40
 We first address the allowance of LFP's amendment. Plaintiffs contend that they were prejudiced because LFP's original admission to responsibility for the December statement obviated the necessity further to develop an issue critical to their case. Although plaintiffs presented the disputed issue at trial, arguing that the district court should "pierce the corporate veil" to hold LFP liable for the acts of its subsidiary, GCMI, Tr. 264-66, plaintiffs claim that LFP's admission dissuaded them from conducting the discovery necessary to support their theory.
 
 
 41
 Plaintiffs' contentions fail. The district court expressly stated, and plaintiffs conceded, that it was LFP's position before and during trial that it was not responsible for the December statement. Tr. 260-66. Plaintiffs' trial conduct likewise contradicts their contention that they were prejudiced. Plaintiffs failed to object to the admission of evidence relevant solely to determining LFP's responsibility for the December statement and even stipulated to some of this evidence. Tr. 264-67. See Usery v. Marquette Cement Mfg. Co., 568 F.2d 902, 906 (2d Cir.1977) ("consent to the trial of an unpleaded issue is implied from a party's failure to object at trial to the introduction of evidence relevant to the unpleaded issue"). Also, despite their knowledge that LFP would deny responsibility for the December statement, plaintiffs never requested a continuance to conduct discovery relevant to their theory of LFP's liability. See Nielson v. Armstrong Rubber Co., 570 F.2d 272, 276 (8th Cir.1978) (noting opposing party's failure to move for continuance in upholding district court's allowance of amendment offered at close of evidence); 6 C. Wright & A. Miller, Federal Practice & Procedure: Civil 2d Sec. 1493 (1971 & Supp.1986). Plaintiffs may not subsequently claim that they did not impliedly consent to litigation of the unpleaded issue.
 
 
 42
 We conclude that the district court adequately considered plaintiffs' claim, Tr. 260-70, and note that the court characterized plaintiffs' position in this regard as "subterfuge." Tr. 261. Although LFP failed to offer a "compelling reason" for its delay in offering the amendment, we recently wrote that motions to amend pleadings to conform to the evidence made "during trial ... may be granted if the [opposing] party ... will not be prejudiced." Hillburn v. Maher, 795 F.2d 252, 264 (2d Cir.1986) (emphasis added), cert. denied, --- U.S. ----, 107 S.Ct. 910, 93 L.Ed.2d 859 (1987). Within the confines of our narrowly circumscribed review in these matters, and in light of the very murky record before us, we are unable to conclude that the district court abused its discretion in granting LFP's motion to amend its answer. Compare Hillburn, 795 F.2d at 263-65 (motion to amend properly denied where opposing party established prejudice and objected to introduction of evidence on new issue), with Nielson, 570 F.2d at 276 (upholding district court's allowance of amendment offered at close of evidence where opposing party did not object to evidence relating to amendment and failed to establish prejudice). As a result, we also affirm the court's dismissal of the claims against LFP arising out of the December statement.
 
 
 43
 With respect to GCMI's late offer of its amendment, we note that GCMI was incorporated only after the May statement was published and that, therefore, the plaintiffs have failed to articulate an intelligible basis for their claim of prejudice. The district court did not abuse its discretion in allowing the amendment. We affirm the dismissal of the claims against GCMI arising out of the May statement.
 
 CONCLUSION
 
 44
 We affirm the judgment in its entirety. Costs to the plaintiffs.
 
 MAHONEY, Circuit Judge, concurring:
 
 45
 I concur in all of the majority's opinion except that portion dealing with the allowance of LFP's amendment to conform its answer to the proof. As to that portion of the majority's opinion, I concur in the result reached by the majority in view of the trial judge's broad discretion with respect to the allowance of such amendments, see Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 312 (2d Cir.1985); Evans v. Syracuse City School District, 704 F.2d 44, 47 (2d Cir.1983); and Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1086 (2d Cir.1977), and the trial judge's greater knowledge of and familiarity with the proceedings below.
 
 
 
 [1]
 The consent form read:
 Larry Flynt Publications,
 Please run my free ad which follows, in all of your publications.
 You can edit it, if necessary to fit your requirements. I have photos available, if you can publish photos. If you don't use "ads", please use my listing:
 NEW YORK STATE
 Tiny young girl 22 years old. 4 ft. 4 in. 82 lbs. I keep it shaved and when I wear size 8 clothes, I look 13 yrs. old. I will be your "Lolita". Prefer men over 40. I am real small and cannot take a big man, except by mouth. Send all details. No answer without self-addressed, stamped envelope.
 I am over 21 years of age and give my permission to publish my ad above.
 /s/DONNA NEWBURY
 Donna Newbury
 c/o PO Box 43
 East Greenbush, N.Y. 12061
 J.App. at 266.
 
 
 [2]
 At the time the May statement appeared Mrs. Dalbec was twenty-six years old, weighed 123 pounds and stood five feet, four inches tall
 The May statement described her as twenty-two years old, eighty-two pounds and four feet, five inches tall.
 
 
 [3]
 In Lerman v. Flynt Distributing Co., 745 F.2d 123 (2d Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985), we wrote that malice requires clear and convincing evidence that some high level employee of the defendant acted with reckless disregard for the accuracy of the defamatory statement. Id. at 139-40. The Lerman defendant caused to be circulated defamatory pictures misidentifying the plaintiff as the person depicted. Id. at 127-28. The evidence of malice was that the defendant knew of a libel suit relating to the pictures by the plaintiff against a third party and a claimed failure to investigate. Id. at 140. We held this evidence insufficient. Id. at 141
 Lerman is distinguishable. The magazine received service of the Dalbecs' original complaint well before the December statement was circulated. There is no evidence that GCMI, the subsidiary of LFP responsible for the December statement, see Part 2, infra, is so large or fragmented that such service did not inform responsible employees of the December statement's falsity.
 Also, the magazine conducted an investigation revealing Bruni's fraud. The jury might reasonably have inferred that the individuals who investigated the May statement were in touch with the individuals responsible for the December statement. Counsel for the magazine virtually conceded this point in his opening statement to the jury. Tr. 410.
 Lerman, therefore, does not require us to disturb the jury's finding of malice.